

```
                                                            1

 1   UNITED STATES DISTRICT COURT

 2   SOUTHERN DISTRICT OF NEW YORK
     ------------------------------------x
 3   JOHN O. MYERS,

 4                    Plaintiff,

 5        -against-

 6   HSBC INVESTMENTS (USA) INC; HSBC
     NORTH AMERICA HOLDINGS INC.; HSBC
 7   SECURITIES (USA) INC.; HSBC FINANCE
     CORPORATION; and HSBC HOLDINGS PLC,
 8
                      Defendants.
 9
     INDEX NO.: 2007 CIV. 04078 (RJH) (GWG)
10   ------------------------------------x

11

12                    30 Wall Street
                      New York, New York
13

14                    February 20, 2008
                      11:03 a.m.
15

16

17        Deposition of NANCY WALSH, pursuant to

18   notice, before Peter Horn, a Notary Public

19   within and for the State of New York.

20

21

22

23        ELLEN GRAUER COURT REPORTING CO., LLC
            126 East 56th Street, Fifth Floor
24               New York, New York 10022
                      212-750-6434
25                    REF: 86782
```

```
 1   A P P E A R A N C E S:
 2
 3   FENSTERSTOCK & PARTNERS LLP
 4   Attorneys for Plaintiff
 5        30 Wall Street
 6        New York, New York 10005
 7   BY:  BLAIR C. FENSTERSTOCK, ESQ.
 8   BY:  ALLISON CHARLES, ESQ.
 9   BY:  BROOKE HALEY, ESQ.
10        PHONE   212-785-4100
11        FAX     212-785-4040
12        EMAIL   bfensterstock@fensterstock.com
13
14
15   SCHNADER HARRISON SEGAL & LEWIS LLP
16   Attorneys for Defendants
17        140 Broadway, Suite 3100
18        New York, New York 10005-1101
19   BY:  SETH E. SPITZER, ESQ.
20        PHONE   212-973-8066
21        FAX     212-972-8798
22        EMAIL   sspitzer@schnader.com
23
24
25
```

```
                                                         3
 1  ------------------- I N D E X -------------------
 2  WITNESS              EXAMINATION BY              PAGE
 3  NANCY WALSH          MR. FENSTERSTOCK               6
 4
 5
 6  --------------- DOCUMENT REQUESTS ---------------
 7  PAGE 23    Production of any materials in the HR
 8             Department relative to Mr. Myers that
 9             has not been produced
10       112   Production of all notes of any
11             conversations that Witness had with
12             Mr. Myers
13
14
15  --------------- E X H I B I T S ---------------
16  PLAINTIFF'S    DESCRIPTION                    FOR I.D.
17  Exhibit 3      Summons and complaint              59
18  Exhibit 28     Mr. Myers' termination
19                 letter                             60
20  Exhibit 64     Letter from Mr. Fensterstock
21                 to Thuy Nguyen regarding
22                 lawsuit                             9
23  Exhibit 67     E-Mail sent from Nancy
24                 Walsh to Jim Detmer                94
25
```

4

```
          ------------ E X H I B I T S (Cont'd) -----------
     PLAINTIFF'S      DESCRIPTION                            FOR I.D.
     Exhibit 250      Printout from Recruitmax
                      and other documents                      118
     Exhibit 251      Witness's summary of
                      conversation with John
                      Myers and Jim Detmer
                      regarding John Myers'
                      candidacy for the role
                      of Investment Specialist                  122

          (EXHIBITS RETAINED BY MR. FENSTERSTOCK)
```

1              S T I P U L A T I O N S
2
3         IT IS HEREBY STIPULATED AND AGREED
4    by and between the attorneys for the
5    respective parties herein that filing and
6    sealing of the within deposition be waived.
7         IT IS FURTHER STIPULATED AND AGREED
8    that all objections, except as to the form
9    of the question, shall be reserved to the
10   time of the trial.
11        IT IS FURTHER STIPULATED AND AGREED
12   that the within deposition may be signed
13   and sworn to before any officer authorized
14   to administer an oath with the same force
15   and effect as if signed and sworn to
16   before the Court.
17
18
19                  - o0o -
20
21
22
23
24
25

6

1  N A N C Y   W A L S H,
2          residing at 468 Harding Road, Fair
3      Haven, New Jersey, having been first
4      duly sworn by the Notary Public
5      (Peter Horn), was examined and
6      testified as follows:
7  EXAMINATION BY
8  MR. FENSTERSTOCK:
9          Q.    Good morning.
10         A.    Good morning.
11         Q.    My name is Blair Fensterstock, and
12 I represent Mr. Myers in this case against HSBC.
13 I am going to ask you some questions this
14 morning.
15             If there's anything I ask you which
16 is unclear, tell me and I will be glad to
17 rephrase it.  If you think it's vague, tell me,
18 and I will rephrase it.  If there's anything
19 that you don't understand that I ask you, tell
20 me and I will try to rephrase it so we both
21 understand it.
22             You have to answer orally.  You
23 can't just shake your head, so the reporter can
24 take down your answers.  Okay?
25         A.    Okay.

```
                                                               7

  1                            WALSH
  2          Q.      State your name for the record.
  3          A.      Nancy Walsh.
  4          Q.      What is your address?
  5          A.      468 Harding Road in Fair Haven, New
  6   Jersey.
  7          Q.      What is your work address?
  8          A.      452 Fifth Avenue, New York, New
  9   York.
 10          Q.      Have you ever had your deposition
 11   taken before?
 12          A.      Yes.
 13          Q.      How many times?
 14          A.      One time.
 15          Q.      In what case?
 16          A.      A personal injury case.
 17          Q.      Were you a witness or a party?
 18          A.      I was a party.
 19          Q.      Now, you are here pursuant to a
 20   notice.  Did you see the notice of deposition?
 21          A.      I don't believe I've ever seen the
 22   notice, no.
 23          Q.      Are you represented by counsel
 24   today?
 25          A.      Yes.
```

|    |    |
|----|----|
| 1  | WALSH |
| 2  | aware that Mr. Myers has been denied "good |
| 3  | lever" status? |
| 4  | A.    Correct. |
| 5  | Q.    But you would agree with me that it |
| 6  | would be wrong for HSBC to deny Mr. Myers "good |
| 7  | lever" status because he filed an EEOC |
| 8  | complaint, correct? |
| 9  | A.    I wouldn't think that was the |
| 10 | reason they denied him "good lever" status, and |
| 11 | I didn't handle his termination, so I don't know |
| 12 | of facts, what went into that decision. |
| 13 | Q.    Well, you became involved with Mr. |
| 14 | Myers' complaint against HSBC in February or |
| 15 | March 2007, correct? |
| 16 | A.    My involvement was very limited. |
| 17 | Q.    And until you and I spoke about |
| 18 | "good lever" status relative to Mr. Myers a few |
| 19 | moments ago, you did not know whether HSBC has |
| 20 | denied Mr. Myers "good lever" status, correct? |
| 21 | A.    That's correct. |
| 22 | Q.    And you were not on a telephone |
| 23 | conversation in which Mr. Palmer said that |
| 24 | because Mr. Myers filed an EEOC complaint, he |
| 25 | would be denied "good lever" status, is that |

```
                                                           57

 1                         WALSH
 2     correct?
 3          A.    I don't remember that.
 4          Q.    You don't remember that?
 5          A.    I don't.
 6          Q.    Were you ever on a telephone call
 7     with Mr. Palmer and anyone from this office?
 8          A.    I believe we had made a phone call
 9     to this office regarding John Myers' COBRA, and
10     that all I remember.
11          Q.    Tell me about that conversation.
12          A.    I believe John's COBRA wasn't
13     affected or put in place.  Rich had followed up
14     with me.  We placed a phone call to this office
15     to discuss it:  That was the extent of my
16     recollection of that phone call.
17          Q.    Do you recall being on a phone call
18     on February 12, 2007 with this office in which
19     the letter that we looked at earlier, which was
20     Plaintiff's Exhibit 64, was discussed?
21          A.    I can't recall if that was the date
22     and the specifics of what the conversation might
23     have been.
24          Q.    But you do remember being on a call
25     with Richard Palmer and this office in which
```

58

WALSH

Plaintiff's Exhibit 64 was discussed?

A. Again, I only remember discussing the COBRA piece of it.

Q. But you remember being on the call where there were other things discussed?

A. The only thing I remember from that call was the COBRA.

Q. And you don't recall Mr. Palmer saying in that telephone call that there was nothing in the letter which was flatly wrong, correct?

A. I don't remember Rich saying that.

Q. And you don't recall being on that phone call where Mr. Palmer admitted that there was a mirror image group set up when Mr. Myers' group was terminated, correct?

A. Correct.

Q. But you do remember a discussion about COBRA in which Mr. Palmer admitted that HSBC had made a mistake in cutting off COBRA for Mr. Myers, correct?

A. I don't remember specifics from the conversation, but that would have been the context of what happened with COBRA, that it

1                    WALSH
2  would have been a mistake that he would have
3  been cut off.
4       Q.    So he shouldn't have been cut off,
5  correct?
6       A.    Correct.
7             MR. FENSTERSTOCK:  Do you want to
8  take a five-minute break?
9             MR. SPITZER:  Yes, I think so.
10            THE WITNESS:  That would be fine.
11            (A recess was taken.)
12            MR. FENSTERSTOCK:  I would like to
13 mark as Plaintiff's Exhibit 3 the summons and
14 complaint in this case.
15                  (Plaintiff's Exhibit 3 for
16 identification, summons and complaint in this
17 case.)
18      Q.    Ms. Walsh, have you ever seen
19 Plaintiff's Exhibit 3 before?
20      A.    No, I have not.
21      Q.    And nobody's ever showed it to you?
22      A.    No.
23      Q.    And it's not in the HR file at HSBC
24 Investments, correct?
25      A.    I don't know.  I haven't reviewed

128

WALSH

correct?

A. I don't remember if his COBRA was ever activated. I know that John complained that it wasn't activated when he was using his insurance.

Q. And you don't know whether HSBC ever activated it?

A. I don't know if it was ever activated.

Q. And you remember being on a phone call, don't you, where Rich Palmer stated that the restricted stock award that was going to be released to Mr. Myers would not be released because he had filed a claims against HSBC?

A. I don't remember that.

Q. If I suggest to you it was on April 25, 2007, does that refresh your recollection?

A. No. I still don't remember.

Q. Well, do you recall any conversation where Mr. Palmer informed Mr. Myers or Mr. Myers' representative that the restricted stock award was not going to be released to Mr. Myers unless he signed the separation agreement?

A. No, I don't remember that.

1                       WALSH
2       A.    I don't know.
3             MR. FENSTERSTOCK:    Thank you.  I
4   think we're done.
5             MR. SPITZER:    Thank you.
6             (Time noted:  3:37 p.m.)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

132

```
 1                A C K N O W L E D G M E N T
 2
 3     STATE OF            )
 4                         ) ss.:
 5     COUNTY OF           )
 6
 7              I, NANCY WALSH, hereby
 8     certify that I have read the transcript of my
 9     testimony taken under oath in my deposition;
10     that the transcript is a true, complete and
11     correct record of my testimony, and that the
12     answers on the record as given by me are true
13     and correct.
14
15                       _____
16                               NANCY WALSH
17
18     Signed and subscribed to before
       me, this       day of              ,
19     2008.
20
21     _____
22     Notary Public, State of _____
23
24
25
```

133

1        C E R T I F I C A T E

2

3   STATE OF NEW YORK    )

4                        : ss.

5   COUNTY OF NEW YORK   )

6

7           I, PETER HORN, a Shorthand Reporter
8   and Notary Public within and for the State of
9   New York, do hereby certify:
10          That NANCY WALSH, the witness whose
11  deposition is hereinbefore set forth, was duly
12  sworn by me and that such deposition is a true
13  record of the testimony given by the witness.
14          I further certify that I am not
15  related to any of the parties to this action by
16  blood or marriage, and that I am in no way
17  interested in the outcome of this matter.
18          IN WITNESS WHEREOF, I have hereunto
19  set my hand this 14th day of March_____, 2008.
20
21
22
23  _____
24  PETER HORN
25