UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN O. MYERS, )
)
Plaintiff, )
)
vs. ) 2007 CIV.
) 04078
) (RJH)(GWG)
HSBC INVESTMENTS (USA) INC., )
HSBC NORTH AMERICA HOLDINGS )
INC., HSBC SECURITIES (USA) )
INC., HSBC FINANCE CORPORATION;)
and HSBC HOLDINGS, PLC, )
Defendants. )
-------------------------------)

DEPOSITION OF RICHARD PALMER
New York, New York
Wednesday, February 27, 2008

Reported by:
Philip Rizzuti
JOB NO. 15483A

February 27, 2008

9:00 a.m.

Deposition of RICHARD PALMER, held at the offices of Fensterstock & Partners, LLP, 30 Wall Street, New York, New York, pursuant to notice, before Philip Rizzuti, a Notary Public of the State of New York.

A P P E A R A N C E S:

FENSTERSTOCK & PARTNERS, LLP
Attorneys for Plaintiff
30 Wall St.
New York, New York 10005
BY: BLAIR FENSTERSTOCK, ESQ.
BROOK HALEY, ESQ.

SCHNADER HARRISON SEGAL & LEWIS, LLP
Attorneys for Defendants
140 Broadway
New York, New York 10005-1101
BY: M. CHRISTINE CARTY, ESQ.

ALSO PRESENT:
LETITIA SMITH, Paralegal,

IT IS HEREBY STIPULATED AND AGREED, by and between counsel for the respective parties hereto, that the filing, sealing and certification of the within deposition shall be and the same are hereby waived;

IT IS FURTHER STIPULATED AND AGREED that all objections, except as to the form of the question, shall be reserved to the time of the trial;

IT IS FURTHER STIPULATED AND AGREED that the within deposition may be signed before any Notary Public with the same force and effect as if signed and sworn to before the Court.

R I C H A R D P A L M E R, called as a witness, having been duly sworn by a Notary Public, was examined and testified as follows:

EXAMINATION BY

MR. FENSTERSTOCK:

Q. Good morning, Mr. Palmer, can you state your name for record.

A. Good morning, Mr. Fensterstock, my name is Richard B. Palmer.

Q. What is your occupation?

A. I am an attorney with HSBC Securities USA Inc.

Q. What is your home address?

A. 281 West Avenue, Darien, Connecticut.

Q. How long have you been an attorney?

A. I graduated law school in 1997, I was admitted to the bar in the State of New York in February or so of 1998.

Q. What is your educational background, college, law school?

A. Graduated from Cornell University,

Palmer

carry them back and forth, I guess we have the originals.

MS. CARTY: All right.

Q. Did there come a point in time where you saw a copy of this letter?

A. Yes.

Q. Who showed it to you?

A. I don't remember.

Q. Did you read it?

A. Yes, sir.

Q. Who is Thuy Nguyen?

A. Ms. Nguyen was a human resources vice president who covered the asset management group.

Q. Is she no longer at HSBC?

A. She is no longer with HSBC.

Q. Do you know where she is?

A. No.

Q. Do you know why she left?

A. Yes.

Q. Why?

A. I believe that -- I think she was let go in early 2007. I don't remember if she resigned or HR let her go for certain --

Palmer

RQ Q. I asked for Ms. Thuy Nguyen's last known address, we will put it in a letter obviously?

MS. CARTY: I think you already have it.

MR. FENSTERSTOCK: We already have it.

MS. CARTY: I think you already have it, maybe you don't?

MR. FENSTERSTOCK: Or maybe I don't know. We will find out and I will tell you.

Q. Who is -- I think you testified that Nancy Walsh is also in HR?

A. Yes.

Q. Did Ms. Nguyen show you this letter?

A. I don't remember.

Q. Did you --

A. I don't remember, she or somebody else in HR forwarded it to me, and I don't remember how I received it either.

Q. Do you recall stating that nothing in the letter was flatly wrong?

Palmer

A. Do I recall it; no, but I have seen it in your complaint.

Q. Do you deny that you ever stated that quote: Nothing in the letter was flatly wrong?

A. I can't deny that, I just don't remember our conversation specifically enough.

Q. Do you recall stating that the group described in the letter was a mirror image of Mr. Myers eliminated group?

MS. CARTY: Objection to the form of the question.

A. Stating that to you?

Q. To anybody?

A. Well, I will limit it to my conversation with you. I don't remember. I don't remember ever saying that it was a mirror image, but I just don't recall.

Q. So you don't deny it?

A. I don't deny what?

Q. That you said that the group described in the letter was a mirror image of Mr. Myers eliminated group?

MS. CARTY: Objection to the form

of the question.

A. I can't deny it, I just don't remember.

Q. You don't deny that you ever stated that the mirror image group was similar in scope to Mr. Myers group, but with a broader range of products; correct?

MS. CARTY: Objection to the form of the question.

A. I can't deny that I said that. I just don't recall. I don't recall our conversation which took place roughly a year ago.

Q. When you talk about our conversation, was that a phone conversation?

A. Yes.

Q. You recall that Ms. Walsh was on that telephone call?

A. I don't recall that.

Q. But you don't deny that Ms. Walsh was on that phone call?

A. I don't know if she was or not. It is my practice not to speak on the speakerphone, especially with another

attorney, I usually pick up the phone or I tell the other attorney that somebody was on the line. I don't recall Nancy being on the line. She may have been in my office because I know I talked to her shortly before I talked to you, but I don't remember her being on the call.

Q. What did you speak about with Ms. Walsh before you spoke with me?

A. I am not going to answer.

Q. Based on?

A. Privilege. In general the focus would have been on what I was going to talk to you about and Mr. Myers, and my view of your letter. But let me just --

MS. CARTY: Wait for him to ask a question.

A. I really don't remember, I may be speculating on that. I really don't recall for certain if Nancy was in my office at the time or immediately beforehand. I know at some point I talked to her on that topic that I just mentioned.

Q. Do you recall how close in time to

Palmer

your conversation with me that you spoke to Nancy Walsh?

A. No.

Q. If I told you that in that phone call you started on the squawk box with Ms. Walsh in your office, and then you picked up the phone and we had a further conversation, at which point there was no way for me to know obviously that Ms. Walsh was in your office or not, does that refresh your recollection?

A. It does not. I just don't recall.

Q. Do you recall my telling you that there was another person from my office also on the phone?

A. I don't recall.

Q. Do you recall if I was on the squawk box or on the telephone?

A. No, I don't recall.

Q. At some point did you assure Mr. Myers or his representative that will be would pay for Mr. Myers COBRA through the end of March 2007?

A. Could you repeat the question,

please.

Q. At some point did you assure Mr. Myers or his representative that HSBC would pay for Mr. Myers COBRA through the end of March 2007?

A. I believe that is right, I remember talking with you and/or Brook about his COBRA coverage and that we would pick it up for a period of months. I don't remember the exact dates. I think it was three months.

Q. You discussed one conversation you had with me. Do you recall having further conversations with Brook?

A. I don't recall any conversations specifically. I know that I had more than one conversation with your office, but actually I want to clarify that. It may have been via E-mail. I don't remember if it was over the phone or E-mail. There was more than one conversation with your office.

Q. Those conversations had to do with COBRA and post termination privileges?

A. One question at a time. I know that they had to do with COBRA. Post

Palmer

termination privileges; I believe that I also said that I would waive any requirement that he sign the release for both COBRA and for use of outplacement.

Q. At some point in time there was a screw up on COBRA by HSBC; is that correct?

A. I believe that is right.

Q. As a result of HSBC's screw up, and excuse my French, on COBRA, Mr. Myers was forced to pay some money to have COBRA in effect; isn't that correct?

MS. CARTY: Objection to the form of the question.

A. I don't know about Mr. Myers paying any money, but I will agree with your French that there was a screw up on his COBRA, and you told me that in the past.

Q. At some point you knew that Mr. Myers had -- strike that.

At some point you knew that Mr. Myers' wife was traveling, she tried to get a prescription, she found out that she didn't have any medical insurance?

A. I remember somebody, either you or

Palmer

one of your other attorneys here relaying that to me. Something similar to that, I don't remember exactly.

Q. The reason she didn't have medical insurance was because HSBC had quote: Screwed up and not followed through with your promise relative to COBRA; is that correct?

MS. CARTY: Objection of the question.

A. You know, I guess. I don't know exactly what the mechanics were, but I know he didn't have the COBRA coverage and I know I told your office that we would get it for him. I don't remember the timing or what the problems were.

Q. Let me show you a document that we marked as Plaintiff's Exhibit 78, document numbered JM-P 00737 through 738.

(Plaintiff's Exhibit 78, document numbered JM-P 00737 through 738, marked for identification, as of this date.)

Q. Do you recognize Plaintiff's Exhibit 78?

Palmer

A. Yes, sir.

Q. What is it?

A. It is an E-mail from me to Brook K. Haley, and yourself regarding HSBC doing its best to rectify his COBRA difficulties, Mr. Myers COBRA difficulties.

Q. Was Thuy Nguyen if you know terminated -- strike that.

Was Thuy Nguyen's termination in any way related to Mr. Myers or Mr. Myers termination or any decisions relative to Mr. Myers COBRA coverage?

MS. CARTY: Objection to the form of the question.

A. I don't know, I wasn't involved in that decision. I never heard that it was.

Q. You will agree that at some point Mr. Myers COBRA coverage was terminated by HSBC prematurely?

MS. CARTY: Objection to the form of the question.

A. No, I don't think I can agree to that as stated.

Q. What is wrong with the statement?

Palmer

further questions, thank you.

MS. CARTY: No questions.

(Time noted: 11:06 a.m.)

________________________

RICHARD PALMER

Subscribed and sworn to before me

this ___ day of __________, 2008

________________________________________

C E R T I F I C A T E

STATE OF NEW YORK )

: ss.

COUNTY OF NEW YORK )

I, Philip Rizzuti, a Notary Public within and for the State of New York, do hereby certify:

That RICHARD PALMER, the witness whose deposition is hereinbefore set forth, was duly sworn by me and that such deposition is a true record of the testimony given by the witness.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 10th day of March, 2008.

______________________

PHILIP RIZZUTI