# FENSTERSTOCK & PARTNERS LLP

30 WALL STREET
NEW YORK, NY 10005
(212) 785-4100
FAX (212) 785-4040
WWW.FENSTERSTOCK.COM

March 11, 2008

*By Hand Delivery*

Honorable Richard J. Holwell
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:   *John O. Myers v. HSBC Investments (USA) Inc., et al.*
2007 Civ. 04078 (RJH) (GWG)

Dear Judge Holwell:

We represent Plaintiff John O. Myers in the referenced matter. We respectfully write in response to Defendants' letter to the Court dated February 29, 2008, in which Defendants seek additional discovery. Plaintiff has produced 26 boxes of documents – every document possibly relevant to this litigation. Plaintiff's counsel produced a Privilege Log. Only privileged material has been redacted or withheld from the 26 boxes of documents produced. In the last two weeks, the parties have taken 18 depositions. Pursuant to this Court's Order, discovery is now complete.

## A.    Defendants Are Not Entitled To Plaintiff's Privileged Communications

For some time, Defendants have engaged in a concerted effort, utilizing several tactics through various discovery devices, to harass Plaintiff by attempting to obtain improperly Plaintiff's privileged material. In this instance, Defendants are seeking Plaintiff's documents that are protected from disclosure by the attorney-client privilege or the work product doctrine.

1.    On February 20, 2008, Defendants' counsel sent a letter enumerating certain objections to Plaintiff's Privilege Log. On February 27, we responded to Defendants' letter, addressing each of Defendants' concerns. Our correspondence is attached hereto as Exhibit 1.

Defendants' objections are unfounded and are solely meant to attempt to discover privileged material. Plaintiff has, in fact, redacted all privileged portions of the documents which were produced, and each of these redactions has been appropriately listed on Plaintiff's Privilege Log.

Honorable Richard J. Holwell
March 11, 2008
Page 2

The record is clear that Mr. Myers customarily maintains copious contemporaneous notes of significant event. These notes, in and of themselves, are not privileged in their entirety. However, many of his notes, as we have explained to Defendants' counsel, include contemporaneous comments made to counsel in preparation of the trial of this matter or concerning legal advice, which we redacted.

It is important to note that Plaintiff's claims involve several acts of discrimination, which essentially fall into two categories: (1) Mr. Myers was wrongfully terminated based upon age discrimination, and (2) Mr. Myers was refused alternative employment by Defendants based upon age discrimination. Additionally, and separate from his age discrimination claims, Mr. Myers was subject to unlawful retaliation after he exercised his statutory right to file a complaint of age discrimination with the EEOC.

We acknowledge that Mr. Myers is under a duty to disclose all materials which may be used in his case-in-chief to support his claims or defenses. Fed.R.Civ.P. 26(a)(1)(A). We also represent to this Court that Mr. Myers has produced, as part of his obligation, all of the notes he drafted of discussions with Defendants that constitute age discrimination.

However, since many discriminatory actions by Defendants arose after Mr. Myers was terminated, or after he consulted with counsel relative to the claims in this action, the notes taken after the date Mr. Myers was informed that he would be terminated serve as proof of the continuing age discrimination and retaliation. These notes with Mr. Myers' comments, to counsel, were drafted after Mr. Myers retained counsel. Therefore, the notes created after Mr. Myers was informed of his termination serve dual purposes: first, as evidence of the continuing acts of discrimination, and second, occasionally to communicate to counsel thoughts and work product prepared in anticipation of this litigation. Indeed, Plaintiff would have been remiss had he attempted to withhold the contemporaneous notes proving Defendants' discriminatory actions. *See Upjohn Co. v. U.S.*, 449 U.S. 383, 395, 101 S.Ct. 677, 685-686 (1981) ("The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney. . .[t]he client . . . may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney" (quoting *City of Philadelphia, Pa v. Westinghouse Elec. Corp.*, 205 F.Supp 830, 831 (D.C.Pa 1962) (internal quotation marks omitted)). *See also Murray v. Bd. of Educ. of City of New York*, 199 F.R.D.154, 155 (S.D.N.Y. 2001).

Accordingly, Plaintiff has produced all of the contemporaneous notes to be used in support of his claims or defenses, but has properly redacted only those portions that contain privileged material, *e.g.* comments made directly to counsel on the underlying facts. In circumstances where documents serve a dual purpose, redaction of the protected material is appropriate. *See Raba v. Suozzi*, 2007 WL 128817 at *4, n. 1 (E.D.N.Y 2007) ("For those hybrid documents containing legal advice which is incidental to the nonlegal advice that is the predominant purpose of the

Honorable Richard J. Holwell
March 11, 2008
Page 3

communication, redaction is appropriate and an acceptable and available method in this Circuit. *In re County of Erie*, 2007 WL 12024 at *5, n. 8; *see also United States v. Weisman*, No. 94-CR760, 1995 WL 244522 at *4 (S.D.N.Y. Apr. 26, 1995); *Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982) (stating that in those instances where both privileged and non-privileged material exist, the privileged material has been deleted)").

Plaintiff's contemporaneous memoranda of events subsequent to his notification of termination served to record facts as they unfolded during the winding down of Plaintiff's employment and his applications for various jobs within HSBC. We acknowledge that because Plaintiff may have communicated relevant facts within his knowledge to his attorneys does not necessarily extend the privilege to these facts. Thus, we produced Plaintiff's notes and redacted only those portions which actually contain privileged information – information relating to communication to counsel seeking advice or that were prepared in anticipation of litigation. Therefore, Plaintiff did not waive any rights or privileges. All privileged material remains privileged, and was appropriately withheld from disclosure.

    2.    On some of Plaintiff's documents, particularly those documents which are e-mails, the identities of the sender and recipient and their addresses have been redacted as irrelevant transmission to counsel. It is curious to note that Defendants object to the redaction of this irrelevant information where on Defendants' own produced documents they employ the exact same practice. Defendants' Privilege Logs are attached hereto as Exhibit 2. Plaintiff is stymied as to why Defendants would want to waste the time of the Court with such a baseless, frivolous and disingenuous objection.

    Nevertheless, we addressed this issue with Defense counsel in correspondence dated February 27, 2008, set forth in Exhibit 1. We reiterate that the identities of email senders and recipients have been redacted as irrelevant transmissions to counsel. No party is under a duty to disclose any information that is irrelevant and, indeed, we have not. *See Kingsway Financial Services, Inc., v. Pricewaterhouse-Coopers LLP*, 2007 WL 473726 at *3 (S.D.N.Y. Feb. 14, 2007) (denying defendants' motion to compel redacted documents because the redactions related to irrelevant material and defendants failed to establish that the redacted material is responsive to their requests for relevant documents).

    Nevertheless, so there will be no question, we have clearly provided the identities of those individuals to whom the emails were sent or received on Plaintiff's Privilege Log (annexed to Defendants' February 29 letter to the Court as Exhibit A) and then in Plaintiff's Redaction Log (annexed here within Exhibit 1). Each of the documents enumerated in Defendants' February 29 letter to the Court, specifically Bates Nos. JM-P 384-385, 416, 448, 681, 691 and 751-752, have been redacted to protect attorney-client privileged material or work product prepared in furtherance of the litigation, which is explicitly stated on Plaintiff's Privilege Log. It is wholly disingenuous for Defendants to assert that they should be entitled to see irrelevant material, or that which is protected

Honorable Richard J. Holwell
March 11, 2008
Page 4

from disclosure, so they may "test" whether privilege has been properly asserted. There exists no such entitlement. This request of Defendants highlights Defendants' transparent attempt to gain access to Plaintiff's privileged information.

**B.      Defendants Are Not Entitled to Electronic Documents**

Defendants first sought a "mirror image" of Plaintiff's computer long after Plaintiff provided Defendants with a response to their document demands, and after Plaintiff produced over 26 boxes (over 75,000 pages) of documents, including every possibly relevant document in Plaintiff's possession. Plaintiff's production was in paper form, with redactions as appropriate, in compliance with Defendants' demands. In other words, Plaintiff has laboriously printed out 75,000 pages of documents and sifted through every page to redact privileged material as appropriate since to do so would, by definition, include privileged and redacted material. We also prepared extensive privilege logs based upon the production, all at considerable time and expense. Production of a "mirror image" of Plaintiff's computer at this time is improper, impracticable, and duplicative of what has already been produced in useable form. It is just another attempt by Defendants to delay this litigation and ascertain Plaintiff's privileged information. To do so would necessarily result in production of privileged and irrelevant information.

This is not an instance where Defendants timely demanded a "mirror image" of Plaintiff's computer but Plaintiff ignored the request. Instead, Plaintiff produced all documents in accordance with Defendants' demand. Defendants then attempted, belatedly, to change their demand to now include metadata and a mirror image of Plaintiff's personal computer. A copy of Defendants' First Demand for the Production of Documents is annexed hereto as Exhibit 3. Defendants did not seek the production of "metadata" or a "mirror image" of Plaintiff's computer in their demands. To request such information after all of Plaintiff's documents have been produced, is a waiver of any claim to have Plaintiff's production duplicated and produced in electronic format. *See D'Onofrio v. SFX Sports Group, Inc.*, 247 F.R.D. 43 (D.D.C. 2008) (finding that a party's failure to specify that documents were to be provided in its original form precluded a belated request for metadata after compliance with the initial demand).

This specific issue was analyzed in depth in *D'Onofrio*, where the court refused to compel production of documents in a format not specified in the demands. *Id.* at 48, n.9 ("Where the requesting party 'does not specify a form for producing electronically stored information, a [responding] party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms'"); *see also* Fed.R.Civ.P. 34(b)(2)(e)(ii); *id.* at 48 ["*Vanston Bondholders Prot. Comm. v. Green*, 329 U.S. 156, 170, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ('Putting the wrong question is not likely to beget right answers even in law.'). A motion to compel is appropriate only where an appropriate request is made of the responding party. *See* Fed.R.Civ.P. 37(a)(1)(B); *Raghavan v. Bayer USA, Inc.*, No. 3:05-cv-682, 2007 WL 2099637 at *4 (D.Conn. July 17, 2007) ('The court will not compel discovery that has not been sought.'). Because no such request

Honorable Richard J. Holwell
March 11, 2008
Page 5

has been made concerning the Business Plan, the Court will not compel the defendant to produce it in its original form with accompanying metadata. *See, e.g., Ponca Tribe of Indians v. Continental Carbon Co.*, No. CIV-05-445-C, 2006 WL 2927878 at *6 (W.D.Okla. Oct.11, 2006) ('The original document requests issued by Plaintiffs failed to specify the manner in which electronic or computer information should be produced. [Defendant] elected to use a commonly accepted means of complying with the request. Nothing in the materials provided by Plaintiffs supports requiring [Defendant] to reproduce the information again in a different format. Accordingly, Plaintiffs' request for reproduction of documents in their native electronic format will be denied.'); *Wyeth v. Impax Labs., Inc.*, No. Civ. A. 06-222-JJF, 2006 WL 3091331 at *1-2 (D.Del. Oct. 26, 2006) ('Since the parties have never agreed that electronic documents would be produced in any particular format, [Plaintiff] complied with its discovery obligation by producing image files'). *Cf. Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) (requiring production in native format where requesting party asked for it and producing party did not object). *See also* RALPH C. LOSEY, E-DISCOVERY, CURRENT TRENDS AND CASES 158-59 (2007) (summarizing recent cases as amounting to a 'lesson ... that in order to obtain metadata you may need, you should specifically ask for it to begin with')"].

Defendants' First Demand for the Production of Documents plainly seeks production of documents in any form, never once mentioning "metadata" or specifying that the production be made by producing a mirror image of Plaintiff's hard drive. We reiterated to Defendants that they had the opportunity at Mr. Myers's deposition to ask Mr. Myers about the creation of any of the materials provided. Defendants took that opportunity and deposed Mr. Myers for an entire day. A copy of our February 27, 2008, letter to Defense counsel is annexed here as Exhibit 4. The information Defendants seek from Mr. Myers's personal computer has already been provided to them, and they have had the opportunity to examine Mr. Myers under oath with respect to those documents.

Moreover, glaringly absent from Defendants' letter to the Court is the explanation we provided for refusing their late request; we specifically stated: "We continue our standing objection to your demand as seeking unnecessary information not related to the claims or defenses in this matter and as overly burdensome. As previously explained to you, to provide a mirror image would necessarily disclose privileged material, which we have spent hundreds of hours redacting." *See* Exhibit 4 annexed hereto. Accordingly, <u>Defendants have been provided with all documents</u> and this most recent request is untimely and improper. *See also* Fed.R.Civ.P.34(b)(2)(E)(iii), which states that "A party need not produce the same electronically stored information in more than one form."

## C.     Defendants Are Not Entitled To Further Discovery Concerning Louis A. Mangone, Esq.

Louis A. Mangone, Esq. is an attorney who has been retained by plaintiff for the purpose of providing legal advice. With little effort, Defendants would have been aware that Mr. Mangone is a member of the bars of the State of New York, the Southern District of New York, the Eastern District of New York, and the United States Supreme Court. Defendants submit that had they known

Honorable Richard J. Holwell
March 11, 2008
Page 6

of Mr. Mangone's "existence," they would have subpoenaed him to obtain documents and his deposition, or ask, in the alternative, for an Order to produce all relevant documents in Mr. Mangone's possession. Defendants have no good faith basis for such a request. This request is nothing more than another thinly veiled attempt to delay these proceedings and to harass Plaintiff and Plaintiff's counsel.

Defendants received plaintiff's privilege log on February 12, 2008, which clearly identifies Mr. Mangone as an attorney and cites attorney-client privilege with regard to communications with, to, and from Mr. Mangone. Defendants deposed Mr. Myers on February 21, 2008, and, through his testimony, clarified Mr. Mangone's role as legal counsel. Instead of addressing any remaining discovery issues with Plaintiff's counsel at that time, Defendants waited until after the close of business on the last day of discovery, Friday, February 29, 2008, to express any further interest in Mr. Mangone.

On February 21, 2008, Mr. Myers testified that he retained Mr. Mangone for legal advice previously, and again in December 2006, and that such services were paid for. *See* Myers Transcript at pg. 11-12, attached as Exhibit 5. Mr. Myers further testified, when asked about a specific document dated January 10, 2007, and listed on Plaintiff's Privilege Log, that Mr. Mangone had been retained for legal advice in 2007 as well, and that such services were paid for. *Id.* at pg. 12, 115. In addition to questioning Mr. Myers about a reference to Mr. Mangone on Plaintiff's Privilege Log (*see* Myers Transcript at pg. 115), Defendants asked Mr. Myers about a document, which Mr. Myers identified as including Mr. Mangone's handwriting. *Id.* at pg. 49-50. Defendants were well aware, prior to their letter to the Court on February 29, 2008, that they were in possession of relevant documents from Mr. Mangone that were not protected by the attorney-privilege.

Defendants cite no authority for their request for production of Mr. Mangone's documents or, in the alternative, to subpoena Mr. Mangone for documents. Defendants are not entitled to discovery regarding any files of Mr. Mangone that are protected by attorney-client and work product privileges. *See Softview Computer Prods. Corp. v. Hayworth, Inc.*, 2000 WL 351411 (S.D.N.Y. Mar. 31, 2000); *ECDC Envt'l v. New York Marine and Gen. Ins. Co.*, 1998 WL 614478 (S.D.N.Y. June 4, 1998); Fed.R.Civ.P 26(b)(5); Fed.R.Civ.P. 45(d).

Notwithstanding, Plaintiff has already produced *all* relevant documents, not protected by the attorney-client privilege, relating to this litigation, and has accounted for such documents on Plaintiff's Privilege Log. This includes any relevant materials concerning, or relating to, Mr. Myers's retention of Mr. Mangone. Defendants' February 29 letter to the Court even quotes from Plaintiff's letter of February 27, 2008, in that we have produced a "paper copy of every document we could find relevant to the claims in this matter." *See* Exhibit 4. Defendants have no good faith basis to assert that all documents that are relevant to this matter, and not protected by the attorney-client privilege, have not been produced and accounted for on the Privilege Log already, and serves as another example of Defendants' attempt to gain access to Plaintiff's privileged material.

Honorable Richard J. Holwell
March 11, 2008
Page 7

**D.**     **Plaintiff Has Produced All Relevant Documents**

Plaintiff has produced every document we could find relative to the claims in this matter. We produced Mr. Myers's 2006 tax return, showing his earned income for the year, which is the only relevant issue related to Mr. Myers's personal tax returns. We explained to Defendants that we will not produce the schedules or the W-2s as they demand, since they are irrelevant to show Mr. Myers's earned income. Noticeably absent from Defendants' letter to the Court is any supporting authority for their overly broad demand or the explanation we provided them for withholding these documents. *See* Exhibit 4. Again, this is a further example of Defendants' efforts to exploit information irrelevant to this matter and otherwise inappropriate for disclosure.

**E.**     **Depositions of Plaintiff's Attorneys Is Inappropriate**

Defendants' request that Mr. Myers' counsel in this litigation, Blair C. Fensterstock, Esq. and Brooke K. Haley, Esq. be deposed is misplaced. As a preliminary matter, the service of deposition notices upon Mr. Fensterstock and Ms. Haley was wholly inappropriate in this matter. As is common knowledge, if one wishes to depose a non-party, as Mr. Fensterstock and Ms. Haley are, it is necessary to serve a subpoena on those non-parties. Fed.R.Civ.P. 45(b)(1). Further, those persons whose attendance is commanded are entitled to fees for their attendance. Fed.R.Civ.P. 45(b)(2). Neither of these requirements has been met and fact discovery is over; thus any previous attempt by Defendants to seek the depositions of Mr. Fensterstock and Ms. Haley has been deficient. The deposition notice for Mr. Fensterstock was served by *email*.

Mr. Palmer and Ms. Walsh, both HSBC employees who were present during the party admissions made by Mr. Palmer, do not deny that phone calls were made or that the party admissions were made. Instead, both witness conveniently "do not recall" the specific words of those admissions. *See* Palmer Transcript at pg. 55-60, attached here as Exhibit 6; *see* Walsh Transcript at pg. 51-53, attached here as Exhibit 7. Accordingly, Defendants' assertion that they should be allowed to cross-examine Plaintiff's attorneys is unfounded – the witnesses involved in the admissions claim to not remember the specifics of the statements and, so, there is no basis on which to challenge the veracity of the allegations.

In fact, there are other devices available to place the party admissions into evidence at trial besides deposing Plaintiff's attorneys. For instance, Plaintiff's attorneys may submit sworn affidavits attesting to what they were told by Defendants' General Counsel. Defendants will have no occasion to dispute counsels' affidavits, since it is well established that a party may not submit admissible evidence that disputes his prior sworn testimony. *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996) (citations omitted). And it cannot be contested that the sworn testimony in this matter does nothing to dispute the allegations.

Honorable Richard J. Holwell
March 11, 2008
Page 8


We urge the Court to consider the ramifications of an Order directing the depositions of Plaintiff's attorneys. Were this practice to be permitted, then party admissions become completely irrelevant as long as the party admissions are made to the adversary's attorney. We provided both witnesses the opportunity to deny or clarify the admissions under oath, yet neither did. Now, on that basis, Defendants seek to place the only other people to hear the statements in the position of testifying as interested witnesses. This scenario, we submit, was set up intentionally by Defendants and should not be allowed by the Court.

Defendants have failed to exhaust all remedies prior to seeking the depositions of opposing counsel, as set forth in more detail in our letter to the Court of February 22, because Defendants clearly are attempting to set the stage for a baseless motion to disqualify - an assertion which Defendants conspicuously do not deny. *See Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340 (S.D.N.Y 2002); *see also Pereira v. United Jersey Bank*, 1997 WL 773716 (S.D.N.Y. Dec. 11, 1997). Not only is there no basis on which to depose Plaintiff's counsel, depositions of this nature are highly disfavored and any request must be weighed "against its potential to oppress the adverse party and to burden the adversary process itself." *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001).

Plaintiff has never requested that a decision on this issue be deferred, as erroneously stated in Defendants' letter to the Court. Indeed, Plaintiff's position has been consistent. Under any circumstance, depositions of Plaintiff's attorneys are wholly inappropriate. Accordingly, and as set forth more fully in our prior correspondence to the Court, which we incorporate herein, we respectfully request that the Court deny Defendants' request to depose Plaintiff's counsel.

It is respectfully submitted that Defendants' requests evince nothing more than an attempt to harass Plaintiff and continue discovery when discovery has now been completed. Plaintiff has produced 26 boxes of documents – all documents at all relevant to this litigation. In the last two weeks the parties have conducted 18 depositions. We respectfully request that your Honor deny Defendants' requests for further discovery and set this matter for trial.

Respectfully submitted,

Jeanne M. Valentine

JMV/jsm

Encl.

Honorable Richard J. Holwell
March 11, 2008
Page 9

    cc:    Magistrate Judge Gabriel W. Gorenstein
            United States District Court
            Southern District of New York

            M. Christine Carty, Esq.
            Schnader Harrison Segal & Lewis LLP
            *Attorneys for Defendants*