UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
JOHN O. MYERS,

                      Plaintiff,

     – against –

HSBC INVESTMENTS (USA) INC.; HSBC NORTH
AMERICA HOLDINGS INC.; HSBC SECURITIES
(USA) INC.; HSBC FINANCE CORPORATION; and
HSBC HOLDINGS PLC,

                      Defendants.
------------------------------------------------------------x

2007 Civ. 04078 (RJH) (GWG)

**ECF CASE**

# MEMORANDUM OF LAW OF PLAINTIFF JOHN O. MYERS IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER

FENSTERSTOCK & PARTNERS LLP
*Attorneys for Defendants*
30 Wall Street, Ninth Floor
New York, New York 10005
(212) 785-4100

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| PROCEDURAL HISTORY | 1 |
| STATEMENT OF FACTS | 3 |
| ARGUMENT | 7 |
| I. The Attorney-Client Privilege Is Necessary To Protect The Confidential Communications Between Plaintiff And His Counsel | 8 |
| II. Plaintiff Properly Redacted Only Privileged Portions of His Communications | 11 |
| III. Plaintiff Has Not Waived His Attorney Client Privilege | 13 |
| IV. Plaintiff Is Entitled To An Award Of Expenses | 14 |
| CONCLUSION | 15 |

## TABLE OF AUTHORITIES

**Page**

### FEDERAL CASES

*105 Street Assocs., LLC v. Greenwich Ins. Co.,*
    No. 05 Civ. 9938, 2006 WL 3230292 (S.D.N.Y. Nov. 7, 2006) .................. 12

*Allied Irish Banks v. Bank of America, N.A.,*
    240 F.R.D.96 (S.D.N.Y. 2007) ........................................ 9

*Allied Irish Banks, p.l.c v. Bank of America, N.A.,*
    No. 03 Civ. 3748, 2008 WL 783544 (S.D.N.Y. Mar. 26, 2008) .................. 8

*Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.,*
    240 F.R.D. 78 (S.D.N.Y. 2006) ....................................... 13

*DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.,*
    No. 04 Civ. 4099, 2006 WL 357825 (S.D.N.Y. Feb. 15, 2006) .................. 12

*Detection Sys., Inc. v. Pittway Corp.,*
    96 F.R.D. 152, 155 (W.D.N.Y.1982) ................................... 12

*Infosint S.A. v. H. Lundbeck A.S.,*
    No 06CIV2869, 2007 WL 1467784 (S.D.N.Y. May 16, 2007) .................... 7

*Phoenix Four, Inc. v. Strategic Resources Corp.,*
    No. 05 Civ 4837(HB), 2006 WL 1409413 (S.D.N.Y. May 23, 2006) .............. 10

*Raba v. Suozzi,*
    No. CV 06-1109, 2007 WL 128817 (E.D.N.Y. Jan. 11, 2007) ................ 11, 12

*Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.,*
    No. 05 Civ. 1031, 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) ................... 12

*Upjohn Co. v. U.S.,*
    449 U.S. 383 (1981) .............................................. 8, 9

*United States v. Weisman,*
    No. 94-CR760, 1995 WL 244522 (S.D.N.Y. Apr. 26, 1995) .................... 12

# TABLE OF AUTHORITIES CONTINUED

**Page**

*Urban Box Office Network, Inc. v. Interfase Mgrs., L.P.*,
  No. 01 Civ. 8854, 2006 WL 1004472(S.D.N.Y. Apr. 17, 2006) . . . . . . . . . . . . . . . . . . . . . 9

*In re Veeco Instr., Inc. Sec. Litig.*,
  No. 05-MD-01695, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) . . . . . . . . . . . . . . . . . . 11

*Yeda Research and Dev. Co. Ltd. v. Imclone Sys. Inc.*,
  443 F. Supp. 570 (S.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATE CASES

*In re County of Erie*,
  473 F.3d 413 (N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*,
  837 N.Y.S.2d 15, 43 A.D.3d 56 (1st Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Spectrum Sys. Int'l Corp. v. Chem. Bank*,
  581 N.E.2d 1055, 78 N.Y.2d 371 (N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

## PRELIMINARY STATEMENT

Plaintiff John O. Myers respectfully submits this Memorandum of Law, together with the Affidavit of Blair C. Fensterstock (the "Fensterstock Aff.") and the exhibits annexed thereto, in support of his Motion for a Protective Order, brought pursuant to Rule 26(c)(1) of the Federal Rules of Civil Procedure, forbidding the disclosure of Plaintiff's privileged communications.

Defendants have wrongfully attempted to obtain Mr. Myers's privileged communications, which were made only to his attorneys in furtherance of this litigation and seeking legal advice, by asserting that Mr. Myers waived the protection of the attorney-client privilege and work product doctrine. Defendants claim that a portion of Mr. Myers's document production, which contains dual-purpose notes, requires that Mr. Myers produce all documents with no redactions. Essentially, Defendants want full disclosure of all Mr. Myers's work product and litigation materials prepared by, for, and on behalf of, himself and his attorneys.

Because Mr. Myers has produced only factual information, and has been very careful to redact from his document production any material that is protected by the attorney-client privilege, such as advice, comments or thoughts relating to litigation strategy, Mr. Myers has not waived the protection of the privileges provided under the Federal Rules of Civil Procedure. Accordingly, Mr. Myers's Motion for a Protective Order, and an award for Mr. Myers's reasonable expenses for making this motion pursuant to Rule 25(c)(3) and Rule 37(a)(5), should be granted in its entirety.

## PROCEDURAL HISTORY

This action was commenced by the filing of a Summons and Complaint on May 24, 2007, a copy of which is annexed to the Fensterstock Aff. as Exhibit A. Issue was joined by service of an

1

Amended Answer dated September 19, 2007, a copy of which is annexed to the Fensterstock Aff. as Exhibit B. On November 7, 2007, Defendants served their First Demand for the Production of Documents, a copy of which is annexed to the Fensterstock Aff. as Exhibit C. Plaintiff served his Response to Defendants' First Demand for the Production of Documents on December 7, 2007, a copy of which is annexed to the Fensterstock Aff. as Exhibit D. Due the large volume of documents produced by Plaintiff (upwards of 26 boxes), most of which is irrelevant to the litigation but was nevertheless responsive to Defendants' Demands, Defendants reviewed the materials over the course of three days, on December 21, 2007, December 28, 2007, and January 7, 2008.

During January 2008, Defendants sought Plaintiff's consent to extend the discovery deadlines in this matter. Plaintiff refused to consent unless Defendants provided Plaintiff with confirmed dates for depositions. Defendants did not confirm dates for depositions and instead, on January 30, 2008, Defendants boldly announced to the Court that they were not going to participate in further discovery or produce any witnesses for deposition. In response, Judge Holwell, on February 5, 2008, Ordered that all discovery, including Defendants' responses to Plaintiff's Document Demands and all depositions, was to be completed by February 29, 2008. A copy of Defendants' January 30, 2008 letter containing the Court's Endorsed Order is annexed to the Fensterstock Aff. as Exhibit E. Accordingly, 16 depositions were conducted between February 19 and February 29, 2008, and one additional deposition was conducted on March 6, with the Court's permission.

Throughout January, and only after the review of Plaintiff's 26-box document production, Defendants incessantly demanded additional irrelevant and improper disclosure, including never-before-sought metadata, "unhighlighted" documents (rather than documents as kept in their normal course), and unredacted documents, amongst other things. Several good faith "meet and confer"

discussions were held between Plaintiff's counsel and Defendants' counsel, but there was no resolution to Defendants' demands. Letters were sent to the Court outlining the parties' disputes regarding discovery on February 29, March 11, March 17, and March 19, 2008. Judge Holwell referred the matter to Magistrate Judge Gabriel W. Gorenstein on or about March 14, 2008, to oversee the parties' discovery disputes. A conference was held before Magistrate Judge Gorenstein on March 28, 2008, at which time Plaintiff was directed to submit the instant motion for a Protective Order.

## STATEMENT OF FACTS

This case arises out of Defendants' unlawful violation of (a) the Age Discrimination in Employment Act, 29 U.S.C.A. §§ 621, 623 et. seq. ("ADEA"); (b) the New York State Human Rights Law, Executive Law § 296 et. seq.("Executive Law'); (c) the Administrative Code of the City of New York § 8-107, et. seq. ("Administrative Code"); and (d) HSBC's own policies, resulting in the discriminatory and unlawful termination of Mr. Myers from his position as Head of Intermediary Sales of HSBC Investments (USA) Inc., based solely on his age. Compl. at ¶ 1. Defendants have also unlawfully retaliated against Mr. Myers in violation of (a) 42 U.S.C.A. § 2000e-3 ("Title VII"); (b) 29 U.S.C.A. § 621, et. seq.; (c) Executive Law §§ 296(1)(e) and 296(7); and (d) Administrative Code §§ 8-101(7), by withholding certain entitlements due Mr. Myers in direct response to Mr. Myers having filed a claim of age discrimination with the Equal Employment Opportunity Commission. Compl. at ¶ 1; *see also* Affidavit of John O. Myers, annexed to the Fensterstock Aff. as Exhibit F ("Myers Aff.") at ¶ 3.[1]

---

[1] Annexed to the Affidavit of Plaintiff John O. Myers is an Appendix, which contains the thirty (30) documents sought by Defendants in unredacted form, which form the basis for this Motion for a Protective Order. In accordance with Magistrate Judge Gorenstein's directive of March 28, 2008, Defendants' attorneys have been provided only with Mr. Myers's Affidavit and the Appendix chart; the unredacted documents are submitted to the

3

Mr. Myers's unlawful termination was cloaked under the veil of a "reorganization" when in fact it was the result of HSBC's desire to rid themselves of Mr. Myers, based on his age. Compl. at ¶ 2. At the time Mr. Myers learned of his unexpected and devastating termination, effective January 27, 2007, Mr. Myers was 59 years old and had been a "faithful servant" to HSBC since June 1999. Compl. at ¶ 3.

Mr. Myers commenced his employment as Chief Executive Officer at HSBC Asset Management (USA) on or about June 22, 1999. Myers Aff. at ¶ 2. Mr. Myers continued as Chief Executive Officer until 2002, and eventually his title became Head of Intermediary Sales for HSBC Investments (USA). *Id.* Shortly thereafter, the title of HSBC Asset Management (USA) was changed to HSBC Investments (USA) Inc. *Id.* Mr. Myers continued in the position of Head of Intermediary Sales until he was fired from HSBC Investments (USA) (hereinafter referred to as "HSBC") in December 2006. *Id.*

Mr. Myers is in the habit of creating contemporaneous notes of meetings and conversations, regardless of whether these events are personal or professional in nature. Myers Aff. at ¶ 4. Mr. Myers has been keeping notes of events for over 15 years. *Id.* He has maintained his note-taking procedure prior to retaining attorneys concerning his employment with HSBC, and his note-taking has continued throughout the course of this litigation. *Id.*

Mr. Myers's retention of attorneys in this matter altered his note taking habit to the extent that his notes were written in a way to (a) assist his attorneys in preparing for this litigation; (b) provide them with developing facts; and (c) request continuing legal advice. Myers Aff. at ¶ 5. Mr.

---

Court under seal for an *in camera* review. The highlighted portions of the documents reflect redactions of privileged material, as Plaintiff produced to Defendants during discovery.

Myers would have taken notes regarding the significant events following his termination regardless of whether he was represented by counsel. *Id.* The purpose of Mr. Myers's notes is to record his immediate recollection of conversations and events so as to refer to them at a later time if necessary. *Id.*

After Mr. Myers retained counsel, he continued to take notes of certain events and conversations, but recognized that these events and conversations were pertinent to the litigation. Myers Aff. at ¶ 6. Mr. Myers recorded the facts, as he has always done, but occasionally inserted comments to his attorneys with the purpose of pointing out his thoughts or comments on a particular issue. *Id.* The facts remained the facts, and Mr. Myers's notes were drafted contemporaneously with the events, unless stated otherwise. *Id.* Nearly all of Mr. Myers's notes are drafted the day of or the day after the event. *Id.*

Mr. Myers's comments to his legal counsel were intermittently dispersed throughout the notes as necessary to make clarifications or to request advice. Myers Aff. at ¶ 7. The notes that were drafted after he had retained legal counsel served to (1) memorialize facts contemporaneously with the events; and (2) communicate his thoughts or questions to his attorneys as related to the events that are the subject of the notes. *Id.*

Mr. Myers never expected his comments or thoughts or impressions, including questions and observations meant solely for his attorneys, to be disclosed to the lawyers for Defendants. Myers Aff. at ¶ 8.

Annexed to Mr. Myers's Affidavit is Appendix A, which accurately depicts those documents which have been redacted as part of Plaintiff's document production to the Defendants in this action. Myers Aff. at ¶ 9. Each and every document listed on and attached to Appendix A are documents

that were delivered to or from Mr. Myers's attorneys, and served the dual purposes of (1) providing contemporaneous memorializations of on-going events concerning this litigation, and (2) seeking legal counsel and advice directly relating to this case. Myers Aff. at ¶ 10.

The individuals listed as senders and/or recipients of the documents in Appendix A are identified as follows:

    a.    John O. Myers, the Plaintiff in this action;

    b.    Blair C. Fensterstock, Plaintiff's attorney of record in this action, who is the Managing Partner at Fensterstock & Partners LLP, who was retained to represent the Plaintiff in this litigation;

    c.    Louis A. Mangone, Mr. Myers's personal attorney, whom Mr. Myers retained to provide legal counsel and advice concerning his employment at Defendant HSBC Investments (USA) Inc. Mr. Myers first retained Mr. Mangone in 2001 and 2002 with respect to his transition from CEO to Head of Intermediary Sales. Mr. Myers then again retained Mr. Mangone in December 2006, specifically in relation to his termination from HSBC;

    d.    Brooke K. Haley, an associate attorney at Fensterstock & Partners LLP;

    e.    Jeanne M. Valentine, an associate attorney at Fensterstock & Partners LLP; and

    f.    Orwig2@aol.com, which is one of two of Mr. Myers's personal email accounts, and sometimes appears as "Mary Myers," in the documents. Mary Myers is Mr. Myers's wife. Myers Aff. at ¶ 11.

## ARGUMENT

Federal Rule of Civil Procedure 26(b)(1) provides that parties are entitled to obtain discovery of any nonprivileged matter that is relevant to any party's claim or defense. A party may withhold information from discovery on the grounds that it is privileged. Fed. R. Civ. P. 26(b)(5). As required by the Federal Rules of Civil Procedure, Plaintiff has properly and expressly claimed attorney-client and work product privilege relating to certain documents, and has properly provided a log that described the nature of those documents and communications, in order to enable Defendants to assess the claim. Fed. R. Civ. P. 26(b)(5).

Good cause exists for granting Plaintiff a Protective Order. *See Infosint S.A. v. H. Lundbeck A.S.*, No 06CIV2869, 2007 WL 1467784 (S.D.N.Y. May 16, 2007). Plaintiff would be greatly harmed by the disclosure of communications specifically prepared for his attorneys in order to seek legal advice. In contrast, Defendants will not be harmed by the entering of a Protective Order keeping Plaintiff's communications to his attorneys safe since Defendants have had every opportunity to discover the facts and circumstances of Mr. Myers's termination and subsequent courses of action through document requests, interrogatories, and depositions. Plaintiff has complied with discovery requests and has produced over twenty six (26) boxes of documents and was never instructed not to answer any question during his deposition. The only information that Plaintiff has refused to produce to Defendants is that which is privileged, and Plaintiff has spent countless hours redacting privileged information in order to maintain his privilege. Defendants repeatedly have attempted to obtain discovery of Plaintiff's attorney-client privileged materials through several courses of action, and now Plaintiff is unfairly forced to seek protection of his privileged communications through a Protective Order.

7

I.  **The Attorney-Client Privilege Is Necessary To Protect The Confidential Communications Between Plaintiff And His Counsel.**

For the attorney-client privilege to apply, the communication between client and attorney must be made "for the purpose of facilitating the rendition of legal advice or services . . . and must be primarily or predominately of a legal character." *Allied Irish Banks, p.l.c v. Bank of America, N.A.*, No. 03 Civ. 3748, 2008 WL 783544, *4 (S.D.N.Y. Mar. 26, 2008) (internal citations omitted). As *Allied* notes, it is the burden of the party asserting the privilege to establish that the information was a communication between client and counsel and that it was "made in order to assist in obtaining or providing legal advice." *Id.*

The recognition of the application of the attorney-client privilege should be determined on a case-by-case basis. *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981); *see Spectrum Sys. Int'l Corp. v. Chem. Bank*, 581 N.E.2d 1055, 78 N.Y.2d 371 (N.Y. 1991) (whether protection applies is a fact-specific determination). The determination of the attorney-client privilege in this matter should be evaluated in light of the unique nature of Mr. Myers's individual note taking practices. Mr. Myers, as he has been in the habit of doing for several years, even prior to his employment with HSBC, creates contemporaneous notes of meetings and conversations. Myers Aff. at ¶ 4. Mr. Myers maintained this note-taking procedure prior to retaining counsel, and has continued it throughout the course of his representation. *Id.* The retention of an attorney in this matter did not alter in any way Mr. Myers's note taking habit except to the extent of inserting questions and comments to his attorneys and requesting legal advice. Myers Aff. at ¶ 5. Mr. Myers would have taken notes regarding the events following his termination regardless of whether he was represented by counsel. *Id.* Plaintiff's contemporaneous memoranda of events subsequent to his notification of termination served to record facts as they unfolded during the winding down of Plaintiff's employment and his

8

applications for various jobs within HSBC.

The portions of Mr. Myers's notes and memoranda that contain communications and requests for legal advice to his counsel are entitled to protection under the attorney-client privilege. Those portions of Mr. Myers's notes and memoranda are predominately of a legal character. *See Spectrum Sys.*, 581 N.E. 2d 1055; *see also* Myers Aff. at ¶¶ 7, 8, 10. Those portions of Mr. Myers's notes and memoranda also were intended to be, and were, kept confidential. *See Allied Irish Banks v. Bank of America, N.A.*, 240 F.R.D. 96 (S.D.N.Y. 2007); *see also* Myers Aff. at ¶¶ 7, 8, 10. Further, in accordance with Federal Rule of Civil Procedure 26(b)(5), Plaintiff provided a sufficient log describing the nature of the documents and communications withheld from communication. Plaintiff has only withheld that part of the communications that specifically seeks legal advice from Plaintiff's attorneys.

Plaintiff acknowledges that the attorney-client privilege only protects the disclosure of communications to and from counsel concerning legal advice or strategy; it does not protect disclosure of the underlying facts and, therefore, disclosure of writings which evince contemporaneous memorializations which are the subject of the litigation must be produced, and have been produced in this case. *Upjohn*, 449 U.S. 383. A client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney. *Id.* at 396, *citing Philadelphia v. Westinghouse Elec. Corp.*, 205 F. Supp 830, 831 (E.D. Pa. 1962). Further, where a communication between an attorney and a client does not reveal any confidential matters, the communication is not privileged. *Urban Box Office Network, Inc. v. Interfase Mgrs., L.P.*, No. 01 Civ. 8854, 2006 WL 1004472, *2 (S.D.N.Y. Apr. 17, 2006). As an example, "where the attorney or client is merely conveying the substance of what a

third party has conveyed, the communication is not privileged." *Id*. The privilege does not protect the client's knowledge of relevant facts. *Id*.

Defendants served Plaintiff with a Demand for the Production of Documents, a copy of which is annexed to the Fensterstock Aff. as Exhibit C, which calls for the production of "All documents, including but not limited to, all notes, memos, diaries, calendars, emails or correspondence, relating to Plaintiff's employment at HSBC Investments, or the termination thereof." *See* Exh. C, No. 3. In his best effort to comply with this demand, Plaintiff produced each and every note, memo, diary, email and correspondence relating to his claims, each of which was properly redacted to exclude only those portions containing privileged communications.

Importantly, the notes produced as part of Plaintiff's document production are intended to be used at trial, as contemporary evidence of the events comprising Plaintiff's claims. *See Yeda Research and Dev. Co. Ltd. v. Imclone Sys. Inc.*, 443 F. Supp. 570 (S.D.N.Y. 2006). These notes were produced as part of Plaintiff's mandatory initial disclosure obligations under Rule 26(a), which requires that a party provide "a copy . . . of all documents . . . that the disclosing party has in its possession, custody or control and may use to support its claims or defenses... ." Fed. R. Civ. P. 26(a)(1)(A)(ii). Had Plaintiff failed to produce these documents, which had to be presented in redacted form to protect Plaintiff's privileges, he would necessarily be precluded from relying upon his contemporaneous notes as evidence at trial, and would have been at risk of being sanctioned by the Court for failure to comply with the mandates of the Federal Rules. *See* Fed. R .Civ. P. 37(c)(1); *see also Phoenix Four, Inc. v. Strategic Resources Corp.*, No. 05 Civ 4837(HB), 2006 WL 1409413, * 7 (S.D.N.Y. May 23, 2006).

## II. Plaintiff Properly Redacted Only Privileged Portions of His Communications.

Plaintiff's counsel has produced all of Mr. Myers's contemporaneous notes to be used in support of his claims or defenses, but properly redacted only those minor portions that contain privileged material, *e.g.* comments made directly to or from counsel on the underlying facts. <u>Mr. Myers's notes were not created for the predominant purpose of communication with his counsel</u>. Rather, the primary and predominant purpose of his notes and memoranda was to record events for his own purposes. *See* Myers Aff. at ¶¶ 12-41. The attorney-client privilege does not necessarily extend to the relevant facts within Plaintiff's knowledge that were recorded in his notes and memoranda, and which were given to his attorneys. Any communication to or from counsel within the notes and memoranda was incidental to the primary purpose, and is entitled to protection from disclosure. Thus, Plaintiff's notes were produced as required, and only those portions which actually contain privileged information – information relating to communication to counsel seeking advice or that were prepared in anticipation of litigation - were properly redacted.

In the context of the well-settled work-product protection from disclosure, the protection is not typically available for documents that are prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of litigation. *In re Veeco Instr., Inc. Sec. Litig.,*, No. 05-MD-01695, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007). However, an important exception to this general rule is frequently recognized: documents prepared for a dual purpose, both for litigation and in the ordinary course of business, are eligible for protection from disclosure under Federal Rule of Civil Procedure 26(b)(3). *Id.* In circumstances where documents serve a dual purpose, redaction of the protected material is appropriate. *See Raba v. Suozzi*, No. CV 06-1109, 2007 WL 128817 (E.D.N.Y. Jan. 11, 2007)

In *Raba*, the Court recognized that "[f]or those hybrid documents containing legal advice which is incidental to the nonlegal advice that is the predominant purpose of the communication, redaction is appropriate and an acceptable and available method . . ." 2007 WL 128817 at *4, n.1; *See also In re County of Erie*, 473 F.3d 413, 421, n.8 (N.Y. 2007); *see also United States v. Weisman*, No. 94-CR760, 1995 WL 244522, *4 (S.D.N.Y. Apr. 26, 1995) (calling for the redaction of a portion of a dairy notation that was to be produced); *see also Detection Sys., Inc. v. Pittway Corp.*, 96 F.R.D. 152, 155 (W.D.N.Y.1982) (stating that in those instances where both privileged and non-privileged material exist, the privileged material has been deleted); *see also 105 Street Assocs., LLC v. Greenwich Ins. Co.*, No. 05 Civ. 9938, 2006 WL 3230292, *7 (S.D.N.Y. Nov. 7, 2006) (calling for the production of an unprivileged document, except for the redaction of a sentence within the document that "concerns an attorney-client communication that relates to legal advice"); *see also Retail Brand Alliance, Inc. v. Factory Mut. Ins. Co.*, No. 05 Civ. 1031, 2008 WL 622810 (S.D.N.Y. Mar. 7, 2008) (where Judge Holwell stated that the portion of a document that was protected by the work-product doctrine need not be produced); *see also DeBeers LV Trademark Ltd. v. DeBeers Diamond Syndicate Inc.*, No. 04 Civ. 4099, 2006 WL 357825 (S.D.N.Y. Feb. 15, 2006) ("While the privilege does not extend to the entirety of each document, certain limited and discrete portions do describe explicit legal advice. . . These portions *are* covered by the attorney-client privilege . . .") (emphasis in original).

Here, each redacted document at issue served a dual purpose, as explained by Mr. Myers in his Affidavit and as is clear from a plain reading of his notes. *See* Myers Aff. at ¶¶ 7, 10. It was entirely proper for Plaintiff to redact only certain portions of the notes and memoranda produced. All privileged material remains privileged, and was appropriately withheld from disclosure.

### III. Plaintiff Has Not Waived His Attorney Client Privilege.

Mr. Myers has not waived his right to protection of attorney client communications. Plaintiff timely provided a sufficient log which detailed the nature of the documents and communications that Plaintiff deemed privileged. A party may waive the attorney client privilege by putting otherwise privileged communications "at issue" in a litigation. *Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp.*, 240 F.R.D. 78 (S.D.N.Y. 2006). "At issue" waiver occurs where a party asserted a claim or defense that he intends to prove by use of the privileged materials. *Deutsche Bank Trust Co. of Americas v. Tri-Links Inv. Trust*, 837 N.Y.S.2d 15, 43 A.D.3d 56 (1st Dep't 2007). That is simply not the case here, as Plaintiff has asserted claims that he intends to prove through the use of non-privileged materials only.

Similarly, Plaintiff has not partially disclosed privileged communications. Plaintiff has redacted privileged communications, and has properly produced the underlying facts of those communications, which are not protected by privilege.[2] Plaintiff has not waived any rights or privileges, and has properly redacted only privileged information and communications within documents that serve a dual purpose. Thus, Plaintiff is entitled to the protection of the attorney client privilege on those communications.

As can be seen from the Affidavit of Mr. Myers and the Appendix annexed thereto, each of the thirty (30) documents sought by Defendants, out of 26 boxes of documents produced, contains both facts, which were noted contemporaneously with the events depicted within the documents, as well as comments, thoughts, questions, and requests for or responses to Plaintiff's need for legal

---

[2] In Defendants' March 19, 2008 letter to Magistrate Judge Gorenstein, Defendants argue that Plaintiff "disclosed an attorney-client communication containing Plaintiff's opinion and not only 'facts.'" However, the communication referenced clearly did not seek legal counsel or advice and is, therefore, irrelevant to Defendants' claim of waiver of privilege.

advice and counseling. The documents at issue are the quintessential "dual purpose" documents that are properly produced redacted, so as to only disclose the facts contained within, while preserving the privilege dictated by fairness and afforded to litigants under the Federal Rules.

Protection of Plaintiff's work-product and attorney-client privileged communications warrants a Protective Order. Defendants will not be harmed by the entering of an order prohibiting them from gaining access to privileged information to which they are not entitled under the Federal Rules. In contrast, Plaintiff will suffer greatly if his confidential and privileged communications to his counsel are revealed.

### IV.    Plaintiff Is Entitled To An Award Of Expenses.

Plaintiff is entitled to an award of reasonable expenses for making this motion pursuant to Fed. R. Civ. P. 25(c)(3) and 37(a)(5). For months, Plaintiff had repeatedly explained that the materials within Plaintiff's production were properly redacted and were intended to be used at trial as contemporaneous evidence of the events alleged in this action. Defendants' wanton disrespect for the attorney-client privilege and work-product doctrine, forcing Plaintiff to incur the expense of the instant motion, as well as the unwarranted delay in the litigation, is ample reason to require Defendants to remit Plaintiff the costs of making this motion.

## CONCLUSION

For all of the above reasons, Plaintiff respectfully requests that his motion for Protective Order and an award of expenses be granted.

Dated: New York, New York
April 24, 2008

                                  FENSTERSTOCK & PARTNERS LLP

By: _____
Blair C. Fensterstock (BF 2020)
Jeanne M. Valentine (JV 3144)

30 Wall Street, 9th Floor
New York, New York 10005
Telephone: (212) 785-4100

*Attorneys for Plaintiff*